UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00430-FDW-DSC

| | |
|---|---|
| DONNA KAY GILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Donna Kay Gill's Motion for Summary Judgment (Doc. No. 11) and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 15). Pursuant to 28 U.S.C. § 636(b)(1)(B), these motions were referred to the magistrate judge for issuance of a Memorandum and Recommendation ("M&R") for disposition (Doc. No. 17). The M&R recommends Plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and the Commissioner's decision affirmed. Plaintiff filed objections to the M&R (Doc. No. 18), and Defendant filed a response (Doc. No. 19). This matter is now ripe for review.

For the reasons set forth, the Court OVERRULES Plaintiff's objections, ACCEPTS and ADOPTS the M&R, DENIES Plaintiff's Motion for Summary Judgment, GRANTS the Commissioner's Motion for Summary Judgment, and AFFIRMS the Commissioner's decision.

I. BACKGROUND

Plaintiff does not lodge any specific objections to the procedural history section contained in the M&R. Indeed, the M&R adopts the procedural history as stated by the parties. Therefore,

the portion of the M&R entitled "Procedural History" is hereby adopted and incorporated by reference as if fully set forth herein. (Doc. No. 17 at 1).

## II. STANDARD OF REVIEW

### A. Review of a Memorandum and Recommendation

A district court may assign dispositive pretrial matters, including motions for summary judgment, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted). *De novo* review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Id. (citations omitted). Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

### B. Review of a Social Security Appeal

When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an [Administrative Law Judge ("ALJ")] has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc.

Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.2012) (internal quotation marks omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (brackets, citation, and internal quotation marks omitted).

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four." Lewis, 858 F.3d at 861. Here, the ALJ considers the

claimant's residual functional capacity ("RFC") to determine what is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1); § 404.1520(a)(4)(iv).

> In making this assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work.

Monroe, 826 F.3d at 179 (citations and quotations omitted). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).
>
> After assessing the claimant's RFC, the ALJ continues with the fourth step, where the claimant must establish she is unable to perform past work. Mascio, 780 F.3d at 635.

Lewis, 858 F.3d at 862. If the claimant meets her burden as to past work at step four, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862 (citations and quotations omitted). If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

III. ANALYSIS

Plaintiff raises four objections to the M&R's findings and conclusions. The Court will review each of Plaintiff's objections in turn. Following de novo review, the Court finds all of Plaintiff's objections to be without merit.

A. Level 2 Jobs

Plaintiff complains that the M&R does not address whether there is an apparent conflict between the RFC and DOT Reasoning Level 2 jobs.[1] (Doc. No. 18 at 2). However, as to Reasoning Levels, Plaintiff only attributed error to the VE's testimony concerning Level 3 jobs. (Doc. No. 12 at 7). Thus, Plaintiff has waived this argument. Further, the Court can find no clear error. This Court has held that a Reasoning Level of 2 does not appear to conflict with an RFC limitation to simple, routine, repetitive tasks. Bushaw v. Berryhill, No. 1:17-cv-00192-FDW, 2018 WL 1972711, at *4 (W.D.N.C. Apr. 26, 2018). Therefore, the ALJ had no obligation to elicit an explanation from the VE or resolve any apparent conflict in his decision.

B. DOT

---

[1] Plaintiff did not objected to the M&R's conclusion that that the remaining jobs identified by the VE satisfy the Commissioner's burden at step five. (Doc. No. 17 at 7).

Plaintiff disputes the accuracy of the M&R's statement that the DOT "defines the housekeeping/laundry (DOT number 302.685-010), mail clerk (DOT number 209.687-026), and checker I (DOT number 222.687-010) jobs' relationship with people as 'Not Significant'" and the M&R's resulting determination of no apparent conflict between the VE's testimony and a limitation of occasional contact with coworkers and the public. (Doc. No. 18 at 2). However, Plaintiff overlooks that this finding is supported by Appendix B of the DOT. Appendix B explains that "[t]he fourth, fifth, and sixth digits of the occupational code reflect relationships to Data, People, and Things, respectively." U.S. Dep't of Labor, Dictionary of Occupational Titles 1005 (4th ed. 1991). For the fifth digit for relationships to People, there is a general hierarchy with numbers from 0 to 8. U.S. Dep't of Labor, Dictionary of Occupational Titles 1005 (4th ed. 1991). The fifth digit in each of the occupation codes listed by the VE is eight. U.S. Dep't of Labor, Dictionary of Occupational Titles 204, 181, 239 (4th ed. 1991). The number eight stands for "Taking Instructions-Helping," which is defined as follows:

> Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning" helpers.

U.S. Dep't of Labor, Dictionary of Occupational Titles 1006 (4th ed. 1991). Eight is the highest number in the hierarchy for relationships to People with the number seven designated as "Serving," which, in contrast, is defined as "attending to the needs or requests of people or animals or the expressed or implicit wishes of people" and as involving "[i]mmediate response." U.S. Dep't of Labor, Dictionary of Occupational Titles 1006 (4th ed. 1991). Meanwhile, the lowest number in the hierarchy of 0 is designated as "Mentoring" and defined as "[d]ealing with individuals in terms of their total personality in order to advise, counsel, and/or guide them with regard to problems

6

that may be resolved by legal, scientific, clinical, spiritual, and/or other professional principals." U.S. Dep't of Labor, Dictionary of Occupational Titles 1006 (4th ed. 1991). Thus, in the hierarchy of relationships to people and based on the definition assigned to the digit 8, the relationship to people for the jobs of housekeeping/laundry (DOT number 302.685-010), mail clerk (DOT number 209.687-026), and checker I (DOT number 222.687-010) is not significant. Hence, there is no apparent conflict between the VE's testimony and a limitation of occasional contact with coworkers and the public.

C. Ability to Stay on Task for Two Hours

Plaintiff maintains that the Court cannot meaningfully review the ALJ's conclusion that Plaintiff can do simple, routine, repetitive tasks for two-hour segments. (Doc. No. 18 at 4).

An ALJ's RFC assessment "must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." Mascio, 790 F.3d at 636 (quoting SSR 96-8p); see also Lewis, 858 F.3d at 862. However, the lack of an explicit function-by-function analysis does not require remand per se. Mascio, 790 F.3d at 636. "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review[,]" id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Remand is not appropriate when a function is irrelevant or uncontested. Id.

When the ALJ finds in step three moderate difficulties in concentration, persistence, or pace, "the RFC must reflect the claimant's work functions as to this limitation unless the ALJ explains why a limitation in concentration, persistence, or pace at step three does not translate into

7

a limitation on the claimant's capacity to do work-related activities." Watts v. Berryhill, No. 3:16-cv-00850-FDW, 2017 WL 6001639, at *4 (W.D.N.C. Dec. 4, 2017) (citing Mascio, 780 F.3d at 638; SSR 96-8p). The ability to concentrate, persist, or maintain pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(3). The Fourth Circuit has held that an ALJ does not account for a claimant's difficulties in concentration, persistence, or pace by restricting work functions to "simple, routine tasks or unskilled work" but does account for such difficulties by restricting the "ability to stay on task." Mascio, 780 F.3d at 638 (citations omitted); but see Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (finding RFC limiting claimant to "simple one, two-step tasks in a low stress work environment with no public contact" sufficient to account for moderate difficulties in concentration, persistence, or pace when supported by two doctors' opinions).

Consistent with the Fourth Circuit's holding, the RFC in this case accounted for Plaintiff's limitation in concentration, persistence, or pace in the RFC by limiting her to "work in a nonproduction setting" and to "the ability to stay on task [for] two hours at a time." (Tr. 37). "An explanation of how long a claimant is able to sustain concentration and attention to perform tasks is a direct accounting for the claimant's ability to stay on task—and difficulties in concentration, persistence and pace." Roope v. Berryhill, No. 5:16-CV-00048-GCM, 2017 WL 1364603, at *3 (W.D.N.C. Apr. 12, 2017). In addition to an in depth summary of the evidence of record, the ALJ clarified that the RFC was supported by the objective medical evidence of record, including examinations showing "appropriate affect and demeanor, normal speech and grossly normal memory[,]" the lack of "any problems interacting with her mental health professional or primary

8

care physician[,]" lack of any admissions "in the emergency room due to mental health issues[,]" and representations that "her medications have been helpful in controlling her symptoms[.]" (Tr. 43; see Tr. 368, 393, 403, 404, 412, 415-16, 420, 424).[2] Therefore, the Court can meaningfully review the ALJ's determination and affirms that substantial evidence supports the ALJ's determination.

D. Social Functioning

Plaintiff contends the ALJ's failure to address Plaintiff's ability to respond appropriately to criticism from supervisors is a reversible error. (Doc. No. 18 at 6). In support of this objection, Plaintiff only cites the state agency psychological consultants rating of Plaintiff's "ability to accept instructions and respond appropriately to criticism from supervisors" as "moderately limited." (Doc. No. 12 at 21 (citing Tr. 82, 97, 116, 134)). However, as explained previously by this Court, the ratings in these questions are "intended to 'ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal weekday or workweek on an ongoing, appropriate, and independent basis.'" Watts, 2017 WL 6001639, at *6 (quoting POMS DI 25020.010).

> [The ratings in these questions, commonly found in] Section I aid[] the consultant in reaching an opinion but do[] not reflect the consultant's ultimate opinion on functionality. . . . Instead, the narrative of the state agency psychological consultants in Section III state the opinion, and the ALJ uses this narrative opinion to determine the RFC. POMS DI 25020.010 ("It is the narrative written by the

---

[2] Plaintiff has not cited evidence in the record to suggest Plaintiff's ability to stay on task is more limited than found by the ALJ. See 20 C.F.R. §§ 404.1512(c), 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"). The Fourth Circuit recognized that remand of an uncontested or irrelevant function would be futile and thus inappropriate. Mascio, at 780 F.3d at 636; see also SSR 96-9p ("[F]ailure to make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions").

psychiatrist or psychologist in section III ("Functional Capacity Assessment") of form SSA-4734-F4-Sup that adjudicators are to use as the assessment of RFC. Adjudicators must take the RFC assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.").

Id. (See, e.g., Tr. 81 ("The questions below help determine the individual's ability to perform sustain work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and pace, social interaction and adaption.)"). Here, the ALJ properly relied on the state agency psychological consultants' narrative summaries and incorporated them into the RFC. The state agency psychological consultants opined in the narrative form: "[c]laimant retains the social interaction capacity for routine interactions with coworkers and supervisors." (Tr. 82, 97, 116, 134). The ALJ as a result limited Plaintiff to "occasional interaction with supervisors and coworkers." (Tr. 37). Therefore, the RFC determined by the ALJ is substantially supported by the state agency psychological consultant medical opinions, and accordingly, the Court finds substantial evidence supports the ALJ's determination. Further explanation is not needed for the Court to meaningfully review the determination, especially when Plaintiff has not cited any evidence to support a limitation beyond the finding of the ALJ. Supra note 2.

E. No Clear Error

Upon further review of the M&R, the Court finds no clear error on the face of the M&R. The Magistrate Judge's findings of fact are supported by the record, and his conclusions of law are consistent with and supported by current case law.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Objections (Doc. No. 18) to the M&R are OVERRULED; the M&R (Doc. No. 17) is affirmed and adopted for the reasons set forth herein; Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 15) is GRANTED; and the Commissioner's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: May 7, 2018

Frank D. Whitney
Chief United States District Judge